Thank you, your honor. I can be a lot briefer on this one. There's a couple of things I'd like to point out. At page 253 in the transcript, Dr. Karen Kaiser noted that in patients with secular diagnosis we have here, positive and negative test results are typical for these kind of patients. And I think that the significance of that is that you can't really hang your head on the negative test results because they're to be expected. The other point I'd like to make is there was a question sent to one of the treating physicians, Dr. Bruno, that starts at page 420. And at 421 he was asked, do your patient's symptoms and signs fluctuate in intensity over the course of hours to days? And Dr. Bruno checked yes. And then he's asked, is it common for symptoms and signs to fluctuate in patients with myothenia gravis? And he also checked yes. Later on page 426, Dr. Bruno indicated that good days and bad days would be present and absences could be expected about twice a month. The significance of that is the vocational expert testified that with that absenteeism somebody could not maintain work. So the judge had to dismiss that. And so he just says there's no basis for it. But the basis is a few pages earlier on page 5 when the doctor indicates this fluctuation is typical of patients with this particular diagnosis. I was interested in that in relation to the Veterans Administration report and the use of the treating psychiatrist to impeach the, in part to impeach the mental impairment findings. My recollection is the treating psychiatrist based his evaluation on a January visit. And there was some evidence that right after that she relapsed back into depression and the like. I'm trying to understand how that assessment ties in with the VA's assessment which found this person to be 100% or maybe I'm mixing up something. But in any event, on the VA assessment that they found Mr. Wagner to be 100% disabled. Yes. And the ALJ basically said I'm not going to be bound by that. We have case law in the circuit which says that it's entitled to great weight and there has to be fairly specific reasons to reject it. Did you address that briefly? Sure. He notes that there are different criteria. But what he neglected to do there was go into what are the different criteria and how does one fail to or succeed in becoming the practical equivalent of the other. He just notes there are different criteria and different programs and I'm not bound by them and who cares. The VA decision itself as I recall it says we don't think you can go back to your past relevant work and any other vocational, any new vocation would not be practical for you. The ALJ here didn't say who cares or anything like that, right? No, he didn't quite say that. That's kind of a rhetorical spin. The other thing on the two days of absenteeism. The VA did mention that, pardon me, the ALJ did mention on page 6 of 16 of his But it took, he said that the VA considerations were different from the social security considerations. I mean, the grid or the basis of deciding VA disability is different than the basis of deciding social security. Am I correct? Yes. The one thing that ALJs would have to do but fairly infrequently because this level of 100% VA disability is not an everyday thing. VA disability is not an everyday thing although they do come up from time to time. You would have to understand the VA criteria and be able to recite them in your And that's why, because of that difference, we're not going to credit it. Otherwise you would not be doing what Judge Fisher indicated was our case law giving it great weight. Yes. You wouldn't know. You'd have to make a detailed distinction between the criteria of the VA and the SSA in order to determine whether it was entitled to great weight. Yes. Or what weight? I thought here that the magistrate judge noted some difference in the timing of the VA. Wasn't the VA determination of disability at an earlier stage? July 1996 was the VA, correct? I believe so. And what's the date of alleged disability here? Oh, you ask such hard questions. Let's see if I can answer that. I've heard many about that wasn't the reason given by the ALJ. No. It looks like that would be at page 159. Let's see if we can get it. The alleged onset date is December 20th, 1995. And as I recall, your date last insured was in 1998. Okay. Well, why don't you address that? If you need to look at the record to find the timing, you can do that on the rebuttal. Okay. Good morning, Your Honors. Jamala Edwards, representing the Commissioner. Well, what we really have here is a case where the ALJ has given more than substantial evidence to support a finding of non-disability. There are many issues here, the medical records. Could you focus on the one that I'm troubled by, the VA? Because our McCarty decision says it's entitled to be given great weight. It's to speak between what's systemic and what's not. And ocular. And the VA has made over a series of protracted examinations a determination of 100% disability. And I acknowledge that the magistrate judge construed that there was a timing issue. But that's not, at least I don't read that. I don't find that as a specific reason given by the ALJ. Rather, he seemed to decide, I'm a male or female ALJ, but seemed to say, well, there's somewhat different standards and I'm not bound by them. And so I'm not sure that I don't come away with a sense of confidence that the ALJ really gave much weight at all. And maybe our McCarty decision is impracticable or whatever, but it does say quite specifically and goes into great detail why it expects ALJs to give great weight to the VA determination. So could you help me out on that? Sure, sure. Well, first I'd say the ALJ in this case did not have the benefit of the McCarty decision. Okay, that helps. Yes. This decision came out in November 2001, and I believe McCarty was in August 2002. So I would assume that's part of the reason. But when you look on page 29, or page 12, rather, of the decision, the ALJ does speak specifically to the criteria, some of the criteria that the VA looked at in determining Mr. Wagner's disability, and then states why those criteria are different than the Social Security criteria. Specifically talks about vocation and age and objective factors. What it really boils down to for the ALJ is that Dr. Kaiser and one other doctor before her in 1995 and then 1996 had found Mr. Wagner had systemic myasthenia gravis, and that all the evidence since then has shown that that diagnosis is no longer supported. There's multiple doctors who have said that systemic diagnosis is no longer applicable, and even some doctors who have said that the ocular MG diagnosis is questionable as well. So when we look at the evidence that was presented most recently in time, as we would find in Ostenbrock, the most probative evidence, that evidence points to the VA diagnosis no longer being applicable or supportable. And so that's the reason, really, that the ALJ has not given the VA opinion as great weight, or he's considered the VA opinion, but it's not given great weight. Well, you don't have to, you can get over the great weight if you find persuasive, specific reasons. Persuasive, specific, something, there's another adjective in there, reasons. And what you're saying is that those reasons are, as you've indicated, that the initial diagnosis of systemic disease has been overcome by more probative evidence of nonsystemic disease, or no disease at all. Correct. The ALJ also said that the objective points, if I'm reading this right, cited in the Veterans Administration decision were based on the reports of symptoms by the claimant. Correct. Which the ALJ, for specific reasons, was finding not credible. Correct. Yes, the ALJ found that Dr. Kaiser relied heavily on the subjective testimony of Mr. Wagner, and as articulated in the decision, there are numerous examples of exaggerated symptoms, of theatrical presentations, and these are quotes from the record, it's actually called theatrical, inconsistent, poor tandem walk, inconsistent with normal results on testing. Even Dr. Grinnell, who Mr. Wagner is relying on, has suggested that secondary gain is an issue, is a concern with Mr. Wagner. Okay. So are there any other questions? No, I think so. Thank you. Okay, thank you. Were you able to find the dates? Yes, in response to the question asked earlier. At page 209 in the transcript is the letter about no other feasible vocational objective, and at page 201 is the decision which gives the date of 3-1-96 for the starting date of 100% VA disability. The alleged onset date was December 20th of 1995, so there's just over a three-month gap between those two dates. I think that was the issue that somebody was interested in asking about. Okay. Let me address the credibility issue in this case, because the ALJ, as I understand it, and I think I had a question like this in another case, at least as I'm understanding it, the ALJ made a negative credibility assessment, and if your client argues against that, then can you tell me why what was done is not consistent with our Ninth Circuit case law? Well, when you're assessing a claimant's credibility, you have to say what testimony is not credible and why that particular testimony is not credible. A generalized finding is not specific. I think that's almost beside the point in this case, because based on the vocational testimony that two absences would be too many, you can almost say the case is going to stand or fall on that, not to dismiss the other issues, but when we accept that this fluctuation of symptoms is typical and the doctor has said there will be two absences, and the VE said that's too many, the ALJ has to discredit that to deny the claim, and once you conclude that there's no substantial evidence to reach any different conclusion, that all by itself would dispose of it. The VA issue would also dispose of it. So the credibility here, it's almost secondary. Thank you. Thank you, Counsel. The case argued is submitted. Thank you for your attendance. Thank you. The next case on calendar is DK Limited Travel v. City of Lake Las Vegas. Thank you.
judges: Fisher, Gould, Bea